# EXHIBIT No. 1



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　**Plaintiff,**<br><br>v.<br><br>**PETER WARREN and EXO-BRAIN, INC. (formerly E-BRAIN SOLUTIONS, LLC),**<br><br>　　　　　　　　　**Defendants.** | CIVIL ACTION FILE NO. 1:04-CV-2403-CC |

## STIPULATION AND CONSENT OF PETER WARREN TO ORDER OF PERMANENT INJUNCTION AND OTHER RELIEF

1. Defendant Peter Warren ("Warren") admits the jurisdiction of this Court over him and over the subject matter of this action.

2. Warren states that he has entered into this Consent voluntarily, and that no promise, threat, offer or inducement of any kind, except as stated herein or as stated in the attached proposed Order of Permanent Injunction and Other Relief Against Peter Warren ("Order of Permanent Injunction") has been made by the plaintiff, Securities and Exchange Commission ("Commission"), or any member, officer, employee, agent, or representative of the Commission to defendant Warren or to anyone acting for him or on his behalf, to induce him to enter into this Consent.

3. Defendant Warren, without admitting or denying the allegations of the Complaint, except that he is admitting the allegation as to personal and subject matter jurisdiction, hereby voluntarily consents to the entry of the Order of Permanent Injunction, in the form annexed hereto and incorporated by reference herein.

```
EXHIBIT
   1
```



testimonial obligations; or (ii) right to take legal or factual positions in defense of litigation or in defense of other legal proceedings in which the Commission is not a party.

8. Defendant Warren acknowledges and agrees that this proceeding and his Consent are for the purposes of resolving this proceeding only, in conformity with the provisions of 17 C.F.R. 202.5(f), and do not resolve, affect, or preclude any other proceeding which may be brought against him. Consistent with the provisions of 17 C.F.R. 202.5(f), Defendant Warren waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant Warren acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.

9. Defendant Warren hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996 or any other provision of law to pursue reimbursement of attorney's fees or other fees, expenses or costs expended by Warren to defend against this action. For these purposes, Defendant Warren agrees that Warren is not the prevailing party in this action since the parties have reached a good faith settlement.

10. Defendant Warren waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

3



11. Defendant Warren waives any right he might have to appeal from the entry of the Order of Permanent Injunction.

12. Defendant Warren waives service of the Order of Permanent Injunction entered herein upon him and agrees that entry of the Order by the Court and filing with the Clerk in the Northern District of Georgia will constitute notice to him of the terms and conditions of such Order of Permanent Injunction.

13. Defendant Warren agrees that he will not oppose the enforcement of the Order of Permanent Injunction on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

Dated: _31 Jan 2005_

_____
Peter Warren

On _31 Jan_____, 2005 Peter Warren a person known to me ( ), OR a person who provided identification in the form of _PASSPORT_ ( ) [check one], personally appeared before me and acknowledged executing the foregoing Consent.

LE SOUSSIGNÉ Me de RASQUE de LAVAL
Notaire à 06400 CANNES, 7, Rue des
Etats-Unis, certifie la matérialité de la
signature de M. PETER WARREN
apposée ci-dessus.

_____
NOTARY PUBLIC
Commission Expires :

Approved as to form : _Jacob S. Frenkel_
Jacob S. Frenkel, Esq.

# EXHIBIT No. 2

ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 17 2005

By: _____
Deputy Clerk

FEB 10 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                              Plaintiff,

v.

PETER WARREN and EXO-BRAIN, INC.
(formerly E-BRAIN SOLUTIONS, LLC),

                              Defendants.

CIVIL ACTION FILE NO.
1:04-CV-2403-CC

## ORDER OF PERMANENT INJUNCTION AND OTHER RELIEF AGAINST PETER WARREN

Plaintiff Securities and Exchange Commission ("Commission"), having filed its Complaint herein, and defendant Peter Warren ("Warren"), having entered a general appearance, having admitted the in personam jurisdiction of this Court over him and the jurisdiction of this Court over the subject matter of the action, having waived entry of findings of fact and conclusions of law under Rules 52 and 65 of the Federal Rules of Civil Procedure, without admitting or denying the allegations of the Commission's Complaint, except as to jurisdiction and venue which he admits, and having consented to the entry of this Order of Permanent Injunction and Other Relief and the Court being fully advised in the premises;

I.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that defendant Warren and his agents, servants, employees and attorneys, and those persons in active concert or participation with him who receive actual notice of this Order of Permanent



EXHIBIT
2

Injunction, by personal service or otherwise, and each of them, be and hereby are permanently enjoined and restrained from violating, directly or indirectly, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. 77q(a)], by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, by:

1.   employing any device, scheme or artifice to defraud;

2.   obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

3.   engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser,

in the offer or sale of any security.

## II.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that defendant Warren, and his agents, servants, employees and attorneys, and those persons in active concert or participation with him who receive actual notice of this Order of Permanent Injunction, by personal service or otherwise, and each of them, be and hereby are permanently enjoined and restrained from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5], by the use of any means or instrumentality of interstate commerce or of the mails or of any facility of any national securities exchange, by:

2

1.      employing any device, scheme or artifice to defraud;

2.      making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

3.      engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

III.

**IT IS FURTHER ORDERED**, that defendant Warren and his agents, servants, employees, attorneys and those persons in active concert or participation with him, who receive actual notice of the order of injunction, by personal service, facsimile or otherwise, and each of them, by use of the mails or any means or instrumentality of interstate commerce, are permanently restrained from directly or indirectly:

(a) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, in the form or common stock or any other security, through the use or medium of any prospectus or otherwise, unless and until a registration statement is in effect with the Commission as to such securities;

(b) carrying securities, or causing them to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale, unless and until a registration statement is in effect with the Commission as to such securities;

(c) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or

3

medium of any prospectus or otherwise, any interest in securities, in the form of common

stock or any other security;

unless a registration statement is filed with the Commission as to such securities, or while

a statement is filed with the Commission as to such security is the subject of a refusal

order or stop order or (prior to the effective date of the registration statement) any public

proceeding or examination under section 8 of the Securities Act. [15 U.S.C. 77h];

in violation of section 5 of the Securities Act. [15 U.S.C. 77e].

IV.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that defendant

Warren shall pay disgorgement and pre-judgment interest in an amount to be resolved

upon motion of the Commission at a later date.  For purposes of disgorgement and pre-

judgment interest, the allegations of the Commission's complaint shall be deemed to be

true, and Warren may not, by way of defense, contend that disgorgement and pre-

judgment interest should not be imposed.  In the event that Warren, pursuant to sworn

financial statement, is incapable of payment, disgorgement and pre-judgment interest

may be waived or partially waived by the Commission, in its discretion.

V.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that defendant

Warren shall pay a civil penalty in an amount to be resolved upon motion of the

Commission at a later date.  For purposes of the civil penalty, the allegations of the

Commission's complaint shall be deemed to be true, and Warren may not by way of

defense contend that a civil penalty should not be imposed.  In the event that Warren,

4

pursuant to sworn financial statement, is incapable of payment, the Commission, in its discretion, may seek not to impose a civil penalty.

## VI.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that defendant Warren, pursuant to Section 20(e) of the Securities Act [15 U.S.C. 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. 78u(d)(2)], be and hereby is permanently prohibited from acting as an officer or director of any issuer that has a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. 78I] or that is required to file reports with the Commission pursuant to Section 15(d) of the Exchange Act [15 U.S.C. 78o(d)].

## VII.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Court shall retain jurisdiction over this matter for all purposes, including implementing and enforcing the terms of this Order, and may order other and further relief that this Court deems appropriate under the circumstances.

SO ORDERED, this 17th day of February, 2005.

**CLARENCE COOPER, JUDGE**
**UNITED STATES DISTRICT COURT**

5

# EXHIBIT No. 3



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                      **Plaintiff,**

v.

PETER WARREN and EXO-BRAIN, INC.
(formerly E-BRAIN SOLUTIONS, LLC),

                      **Defendants.**

CIVIL ACTION FILE NO.
1:04-CV-2403-CC

## STIPULATION AND CONSENT OF EXO-BRAIN, INC. TO ORDER OF
## PERMANENT INJUNCTION AND OTHER RELIEF

    1.   Defendant Exo-Brain, Inc. ("Exo-Brain," formerly E-Brain Solutions, LLC)
admits the jurisdiction of this Court over it and over the subject matter of this action.

    2.   Exo-Brain states that it has entered into this Consent voluntarily, and that no
promise, threat, offer or inducement of any kind, except as stated herein or as stated in
the attached proposed Order of Permanent Injunction and Other Relief Against Exo-
Brain, Inc. ("Order of Permanent Injunction") has been made by the plaintiff, Securities
and Exchange Commission ("Commission"), or any member, officer, employee, agent, or
representative of the Commission to defendant Exo-Brain or to anyone acting for it or on
its behalf, to induce it to enter into this Consent.

    3.   Defendant Exo-Brain, without admitting or denying the allegations of the
Complaint, except that it is admitting the allegation as to personal and subject matter
jurisdiction, hereby voluntarily consents to the entry of the Order of Permanent
Injunction, in the form annexed hereto and incorporated by reference herein.



EXHIBIT

3



4. Defendant Exo-Brain agrees that the attached Order of Permanent Injunction, in the form annexed hereto, may be presented by the Commission to the Court for signature and entry, without further notice.

5. Defendant Exo-Brain agrees that this Consent shall be made a part of the attached Order of Permanent Injunction to be entered by this Court in this action, and further agrees that this Court shall retain jurisdiction over it for the purpose of enforcing the terms of the Order of Permanent Injunction.

6. Defendant Exo-Brain states that it understands that the Commission cannot and does not confer on it or on any person or entity, immunity from any criminal proceedings against it or other persons or entities for any actions related to or arising from this or any other matter.

7. Defendant Exo-Brain acknowledges that it has read, understands, and agrees to comply with the policy of the Commission, set forth in 17 C.F.R. § 202.5(e), against permitting a defendant to consent to an order that imposes a sanction while denying any allegation or finding in the Complaint. In compliance with this policy, defendant Exo-Brain agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the Complaint or creating the impression that the Complaint is without factual basis; and (ii) that upon the filing of this Consent, defendant Exo-Brain hereby withdraws any papers filed in this action to the extent that they deny any allegation in the Complaint. If defendant Exo-Brain breaches this agreement, the Commission may petition the Court to vacate the Order of Permanent Injunction and restore this action to its active docket. Nothing in this provision affects Exo-Brain's: (i) testimonial obligations; or (ii) right to take legal or factual positions in

2



defense of litigation or in defense of other legal proceedings in which the Commission is not a party.

8. Defendant Exo-Brain acknowledges and agrees that this proceeding and its Consent are for the purposes of resolving this proceeding only, in conformity with the provisions of 17 C.F.R. 202.5(f), and do not resolve, affect, or preclude any other proceeding which may be brought against it. Consistent with the provisions of 17 C.F.R. 202.5(f), Defendant Exo-Brain waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant Exo-Brain acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.

9. Defendant Exo-Brain hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996 or any other provision of law to pursue reimbursement of attorney's fees or other fees, expenses or costs expended by Exo-Brain to defend against this action. For these purposes, Defendant Exo-Brain agrees that Exo-Brain is not the prevailing party in this action since the parties have reached a good faith settlement.

3



10.  Defendant Exo-Brain waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

11.  Defendant Exo-Brain waives any right it might have to appeal from the entry of the Order of Permanent Injunction.

12.  Defendant Exo-Brain waives service of the Order of Permanent Injunction entered herein upon it and agrees that entry of the Order by the Court and filing with the Clerk in the Northern District of Georgia will constitute notice to it of the terms and conditions of such Order of Permanent Injunction.

13.  Defendant Exo-Brain agrees that it will not oppose the enforcement of the Order of Permanent Injunction on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

Dated: **31 Jan 2005**

Exo-Brain, Inc. (formerly, E-Brain, LLC), by Peter Warren, President

On **31 Jan**_____, 200**5** Peter Warren, a person known to me ( ), OR a person who provided identification in the form of **PASSPORT**____ (✓) [check one], personally appeared before me and acknowledged executing the foregoing Consent.

JE SOUSSIGNÉ, [Ville de NICE] de CANNES
Notaire a 06400 CANNES 7 Rue des
Etats-Unis, certifie la materialité de la
signature de M. Peter WARREN.............
apposée ci-dessus

NOTARY PUBLIC
Commission Expires :

Approved as to form :

Jacob S. Frenkel, Esq.

4

# EXHIBIT No. 4

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

FEB 1 1 2005

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

SECURITIES AND EXCHANGE
COMMISSION,

                                  **Plaintiff,**

v.

PETER WARREN and EXO-BRAIN, INC.
(formerly E-BRAIN SOLUTIONS, LLC),

                                  **Defendants.**

**CIVIL ACTION FILE NO.
1:04-CV-2403-CC**

## ORDER OF PERMANENT INJUNCTION AND OTHER RELIEF AGAINST EXO-BRAIN, LLC

Plaintiff Securities and Exchange Commission ("Commission"), having filed its Complaint herein, and defendant Exo-Brain, Inc. ("Exo-Brain," formerly known as E-Brain Solutions, LLC), having entered a general appearance, having admitted the in personam jurisdiction of this Court over it and the jurisdiction of this Court over the subject matter of the action, having waived entry of findings of fact and conclusions of law under Rules 52 and 65 of the Federal Rules of Civil Procedure, without admitting or denying the allegations of the Commission's Complaint, except as to jurisdiction and venue which it admits, and having consented to the entry of this Order of Permanent Injunction and Other Relief and the Court being fully advised in the premises;

I.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that defendant Exo-Brain and its agents, servants, employees and attorneys, and those persons in active concert or participation with it who receive actual notice of this Order of Permanent



EXHIBIT
4

Injunction, by personal service or otherwise, and each of them, be and hereby are permanently enjoined and restrained from violating, directly or indirectly, Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. 77q(a)], by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, by:

1.  employing any device, scheme or artifice to defraud;

2.  obtaining money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

3.  engaging in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser,

in the offer or sale of any security.

## II.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that defendant Exo-Brain, and its agents, servants, employees and attorneys, and those persons in active concert or participation with it who receive actual notice of this Order of Permanent Injunction, by personal service or otherwise, and each of them, be and hereby are permanently enjoined and restrained from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5], by the use of any means or instrumentality of interstate commerce or of the mails or of any facility of any national securities exchange, by:

1.   employing any device, scheme or artifice to defraud;

2.   making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

3.   engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

## III.

**IT IS FURTHER ORDERED**, that defendant Exo-Brain and its agents, servants, employees, attorneys and those persons in active concert or participation with it, who receive actual notice of the order of injunction, by personal service, facsimile or otherwise, and each of them, by use of the mails or any means or instrumentality of interstate commerce, are permanently restrained from directly or indirectly:

(a) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, in the form or common stock or any other security, through the use or medium of any prospectus or otherwise, unless and until a registration statement is in effect with the Commission as to such securities;

(b) carrying securities, or causing them to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale, unless and until a registration statement is in effect with the Commission as to such securities;

(c) making use of any means or instruments of transportation or  communication in interstate commerce or of the mails to offer to sell or offer to buy, through the use or

medium of any prospectus or otherwise, any interest in securities, in the form of common stock or any other security;

unless a registration statement is filed with the Commission as to such securities, or while a statement is filed with the Commission as to such security is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 8 of the Securities Act. [15 U.S.C. 77h];

in violation of section 5 of the Securities Act. [15 U.S.C. 77e].

## IV.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that defendant Exo-Brain shall pay disgorgement and pre-judgment interest in an amount to be resolved upon motion of the Commission at a later date. For purposes of disgorgement and pre-judgment interest, the allegations of the Commission's complaint shall be deemed to be true, and Exo-Brain may not, by way of defense, contend that disgorgement and pre-judgment interest should not be imposed. In the event that Exo-Brain, pursuant to sworn financial statement, is incapable of payment, disgorgement and pre-judgment interest may be waived or partially waived by the Commission, in its discretion.

## V.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that defendant Exo-Brain shall pay a civil penalty in an amount to be resolved upon motion of the Commission at a later date. For purposes of the civil penalty, the allegations of the Commission's complaint shall be deemed to be true, and Exo-Brain may not by way of defense contend that a civil penalty should not be imposed. In the event that Exo-Brain,

pursuant to sworn financial statement, is incapable of payment, the Commission, in its discretion, may seek not to impose a civil penalty.

VI.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that this Court shall retain jurisdiction over this matter for all purposes, including implementing and enforcing the terms of this Order, and may order other and further relief that this Court deems appropriate under the circumstances.

SO ORDERED, this 11th day of February, 2005.

**CLARENCE COOPER, JUDGE**
**UNITED STATES DISTRICT COURT**

5

# EXHIBIT No. 5

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

            v.

PETER WARREN and EXO-BRAIN, INC.
(formerly E-BRAIN SOLUTIONS, LLC),

        Defendants.

Civil Action No.
1:04-CV-2403-CC

**DECLARATION OF WILLIAM C. WOODWARD IN SUPPORT OF THE
SEC'S MOTION FOR SUMMARY JUDGMENT, AND TO SET DISGORGEMENT,
PREJUDGMENT INTEREST AND A CIVIL PENALTY
AGAINST WARREN AND EXO-BRAIN, INC.**

I, William C. Woodward, Jr. declare pursuant to the provisions of 28 U.S.C. § 1746:

1.    I am employed by the Atlanta District Office of the Securities and Exchange Commission ("Commission" or "SEC") as a Staff Attorney.  I was responsible for the Commission's investigation of this matter involving the unregistered securities offerings and securities fraud of Peter Warren ("Warren") and the company under his control, Exo-Brain, Inc. (formerly E-Brain, Solutions, LLC) ("Exo-Brain").  I have direct knowledge of the matters set forth herein, from that investigation.



EXHIBIT

5

2.   My work address is 3475 Lenox Road, N.E. Suite 1000, Atlanta, Georgia  30326.  The telephone number for my office is (404) 842-7605.

3.   In conjunction with the preparation of this declaration, I reviewed the sworn investigative testimony of Warren, of John Harris (former CFO of Exo-Brain), of Robert Montgomery (former consultant to Exo-Brain), of Steven Lowe, and of Eric Ingram (chief technology engineers).  I have also reviewed selected securities offering materials of Exo-Brain including, but not limited to, Exo-Brain's Private Placement Memorandum ("PPM") dated August 27, 2001, as well as other documents relating to this scheme.

4.   The Commission concluded from its investigation that in the scheme Warren, in his individual capacity, and Exo-Brain, through Warren's actions, obtained ill-gotten gains from investors from the fraudulent offerings and sales of unregistered securities of Exo-Brain in 2000 and 2001.  From the investigation of the SEC in this matter, it is without doubt that Warren was the founder and President of Exo-Brain, as well as a corporate director.  Warren controlled Exo-Brain and used it as a corporate vehicle to conduct the securities fraud in this matter.

2

5.   To calculate disgorgement, I looked to the admissions of Warren and Exo-Brain contained in the company's PPM dated August 27, 2001.  The Commission received this PPM during the course of its investigation, from an investor who received it from Warren.  From the Commission's investigation in this matter, this PPM appears to be the final PPM issued by Warren and Exo-Brain in this scheme.  In it, Warren and Exo-Brain admit the following, which I have caused to be quoted verbatim as follows:

> **In 2000 and 2001, E-Brain financed its operations through the sale of its securities to more than 200 investors. The offers and sales of these securities were not registered under federal or state securities laws.** Federal and state securities laws require registration of securities unless an appropriate exemption from the registration requirements of those laws is available.  To the extent that an exemption was not available for these offerings, we may not have complied with the registration requirements of these laws.  If so, the purchasers could seek rescission of their investments, and recover the money they paid for the securities.  We intend to make a rescission offer in 2001 or the first quarter of 2002 to all or some of the investors who participated in the offerings of securities by E-Brain.  **Should we make the offer to all of these purchasers, and should all of these purchasers accept the rescission offer, we would need to pay those purchasers up to approximately $6.4 million, excluding interest, which could have a material adverse effect on our financial condition and our ability to continue to operate our business . . .**

[Emphasis added.]  Based upon this admission by the defendants in the PPM, which the SEC knows was distributed

3

to investors and potential investors, disgorgement against Warren and Exo-Brain should be $6,400,000, with joint and several liability for both defendants.

6.    In my review of Warren's sworn testimony, which he gave to the SEC staff during its investigation, Warren admitted under oath that the company never realized any income from the sale of Exo-Brain's technology, or from sales of its supposed products.  Warren also admitted that he received monthly payments from the proceeds of the sales of Exo-Brain securities during 2000 and 2001.  Warren testified that he took monthly amounts which he caused to be transferred from Exo-Brain's Bank of America account in Atlanta, to Warren's personal account at Credit Foncier Monegasque located in the European principality of Monaco. From the SEC's investigation, it is clear that Warren was using investor funds from this securities scheme to support a lifestyle which included (and still includes) a valuable residential property located in the city of Cannes, in the South of France.

7.    Based upon the Commission's investigation, the sole business purpose of Exo-Brain was to serve as a corporate vehicle for Warren's illegal securities sales.

8.    The SEC staff's calculation of disgorgement for Warren and Exo-Brain of $6,400,000 to be paid by the

4

defendants jointly and severally, is believed to be a rational, conservative total, based upon admissions of the defendants in the most recent PPM.

9.   I have caused prejudgment interest to be calculated on the amount of $6,400,000 from September 1, 2001 through October 31, 2005, at the interest rates used by the Internal Revenue Service for unpaid balances (which changes quarterly, and for the relevant period herein ranged from a low of 4% annually to a high of 7% annually. During that period, the total prejudgment interest on $6,400,000 totals $1,503,964.08, for a combined total of $7,903,964.08.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of November, 2005

William C. Woodward

5



# U.S. Securities and Exchange Commission

# Division of Enforcement

# Prejudgment Interest Report

## Warren/Exo-Brain--joint and several

| Quarter Range | Annual Rate | Period Rate | Quarter Interest | Principal+Interest |
|---|---|---|---|---|
| Violation Amount | | | | $6,400,000.00 |
| 10/01/2001-12/31/2001 | 7% | 1.75% | $112,000.00 | $6,512,000.00 |
| 01/01/2002-03/31/2002 | 6% | 1.5% | $97,680.00 | $6,609,680.00 |
| 04/01/2002-06/30/2002 | 6% | 1.5% | $99,145.20 | $6,708,825.20 |
| 07/01/2002-09/30/2002 | 6% | 1.5% | $100,632.38 | $6,809,457.58 |
| 10/01/2002-12/31/2002 | 6% | 1.5% | $102,141.86 | $6,911,599.44 |
| 01/01/2003-03/31/2003 | 5% | 1.25% | $86,394.99 | $6,997,994.43 |
| 04/01/2003-06/30/2003 | 5% | 1.25% | $87,474.93 | $7,085,469.36 |
| 07/01/2003-09/30/2003 | 5% | 1.25% | $88,568.37 | $7,174,037.73 |
| 10/01/2003-12/31/2003 | 4% | 1% | $71,740.38 | $7,245,778.11 |
| 01/01/2004-03/31/2004 | 4% | 1% | $72,457.78 | $7,318,235.89 |
| 04/01/2004-06/30/2004 | 5% | 1.25% | $91,477.95 | $7,409,713.84 |
| 07/01/2004-09/30/2004 | 4% | 1% | $74,097.14 | $7,483,810.98 |
| 10/01/2004-12/31/2004 | 5% | 1.25% | $93,547.64 | $7,577,358.62 |
| 01/01/2005-03/31/2005 | 5% | 1.25% | $94,716.98 | $7,672,075.60 |
| 04/01/2005-06/30/2005 | 6% | 1.5% | $115,081.13 | $7,787,156.73 |
| 07/01/2005-09/30/2005 | 6% | 1.5% | $116,807.35 | $7,903,964.08 |

| Prejudgment Violation Range | | | Quarter Interest Total | Prejudgment Total |
|---|---|---|---|---|
| 10/01/2001-09/30/2005 | | | $1,503,964.08 | $7,903,964.08 |